# Elizabeth Hardin, Appellee, v. City of Moline, Appellant.

## Gen. No. 5,657.

1. EVIDENCE—*as to position of injured party in the family.* In a personal injury action an objection to the testimony of plaintiff that she had four children and a husband and her occupation was doing washing and janitor work is properly overruled.

2. CITIES AND VILLAGES—*notice of defective sidewalk.* In a personal injury action evidence that it was customary for the police to report defects in the sidewalks; that the reports were put on slips which were collected by the Street Commissioner; that the defect in question was reported two days before the accident and that the Street Commissioner was on duty at that time, is sufficient to charge the city with notice.

3. CITIES AND VILLAGES—*questions for jury.* Where it appears that defendant, a city, was charged with notice of a defective sidewalk and neglected to make repairs and as a result plaintiff sustained injuries, the court does not err in not directing a verdict for defendant.

4. DAMAGES—*where verdict is not excessive.* A verdict for $1,450

for injuries sustained by a woman through falling on a defective sidewalk is not excessive where plaintiff was unable to work for two years and thereafter her earning capacity was reduced about half, and prior to the accident she was accustomed to work six days a week, earning one dollar and a half a day.

5. INSTRUCTIONS—*when need not contain all elements necessary to recovery.* Where an instruction does not direct a verdict it need not contain all elements entitling plaintiff to recover.

6. INSTRUCTIONS—*when not error to refuse.* It is not error to refuse an instruction which is merely an abstract proposition of law.

7. INSTRUCTIONS—*where instruction does not assume defendant liable.* An instruction to the effect that if the jury believe that defendant city negligently permitted a hole to remain in the sidewalk and knew or by the exercise of reasonable care might have known of said hole for a sufficient length of time to repair it, then plaintiff is entitled to recover, is not open to the objection that it assumes the city liable.

8. INSTRUCTIONS—*when refusal of instructions is not reversible error.* The refusal of proper instructions is not reversible error where such instructions if given would not have changed the verdict.

Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEIST, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed October 15, 1912. Rehearing denied April 3, 1913. *Certiorari* denied by Supreme Court (making opinion final).

G. A. SHALLBERG, for appellant.

PEEK & DIETZ, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the court.

Appellee was injured by falling into a hole in a sidewalk in the City of Moline. In her declaration she charges appellant with negligence in that it permitted the said sidewalk at the place where the hole existed to be and remain in an unsafe condition, after notice, etc., and in failing to properly light that portion of the street in which the alleged defect existed. The plea of not guilty was filed, and a trial had, resulting in favor of appellee, with verdict and judgment against appellant for $1,425. An appeal is prayed to this

court, with 17 errors assigned, but appellant presents in argument only the following:—(1) It was improper to introduce proof that plaintiff was the head of a family; (2) There was no proper evidence introduced to show either actual or implied notice to the City of Moline of the alleged defect in the sidewalk; (3) The verdict of the jury is against the weight of the evidence; (4) The court erred in not directing a verdict for defendant, (a) at the close of plaintiff's case, (b) at the close of all the evidence; (5) The damages awarded are excessive; (6) the court erred in giving plaintiff's instructions Nos. 1, 2 and 3 as modified; (7) The court erred in refusing defendant's instructions Nos. 2, 3 and 5; and on the grounds pointed out in the argument appellant seeks a reversal, thereby waiving all other errors assigned.

Taking up the points made in argument, the first to be considered is the alleged improper introduction of evidence showing the members of the family of appellee. There is no proof in the record that appellee was the head of a family, or that any one of the members of the family was dependent on the earnings of appellee for support. Indeed, it is shown by the evidence that appellee lived with her husband, who in law is the head of the family.

The evidence on the subject of the members of the family is as follows:—(Appellee's Testimony.) "I have a family; I have four children and a husband; my occupation during the last eight or nine years has been washing, ironing and janitor work;" which testimony as the questions were asked was objected to as irrelevant, incompetent and immaterial, and the objections were overruled.

Under the authority of City of Joliet v. Conway, 119 Ill. 489, the overruling of the objections to this evidence was not error. The only theory on which it could be contended to be erroneous was that such evidence might tend to arouse the sympathy of the jury; but appellant is hardly in condition to make that point,

and cannot avail itself of the objection to appellee's testimony, because without objection it was allowed to be shown for appellee by the witness Fanny Lee, that she was a daughter of appellee and lived with her father and mother, and that she had two sisters and one brother.

The evidence of the witness Fanny Lee was substantially the same as that of appellee on the same subject, so that the jury had the very same evidence before them, whether they considered the evidence of appellee, which was objected to, or the evidence of Fanny Lee, which was not objected to.

The second point made in the argument is the lack of evidence to show notice to the city of the defect in the sidewalk. The proof was that years before, under a former Mayor, the practice had been inaugurated and followed of having police officers, when they came into the office of the police, before leaving, after having been on duty, to report to the desk officer all defects they had found in the streets and sidewalks, and of having the desk officer make a notation thereof in a book, and prepare a slip, giving an indication of the defect and its locality, and hanging the slip on a certain hook in the office for the superintendent of streets, and of having the street superintendent go to that office at least once each day, and get these notes or slips, under orders to proceed to make necessary repairs at once, without waiting for any special order from the Mayor.

The proof further is that this practice had been followed after that Mayor had retired, and the Mayor came into office who was in office at the time of the accident, and that the police records show under date of August 29, 1907, two days before the accident, "Wash-outs on 9th. Avenue between 27th. and 29th. streets. Rept. to Comr." It was also proved that this was made by the desk officer, and that the abbreviation above quoted meant, "Reported to Street Commissioner," and that the place specified was the place

where the accident occurred; that the slip containing the entry was placed on the Street Commissioner's hook in his office; that the Street Commissioner came into that office every morning between seven and eight o'clock, and took such slips as were upon the hook, and that the Street Commissioner was on duty during the entire month of August, 1907, and always got the slips.

It is not contended by appellant, at least it is not pointed out in the argument, how this evidence was incompetent, irrelevant and immaterial any further than to say so, but the only point to be gleaned from the argument is, that the proof does not go far enough, and show that at the time of the accident, any one had been instructed by resolution or ordinance to report defects, make entries in the book, or on slips and hang the slip on the hook; and that it did not appear from the evidence by a like resolution or ordinance that the Street Commissioner had been instructed to collect the slips. In short, that it is not shown it was the legal duty of anybody to do anything so far as streets and sidewalks are concerned. The Street Commissioner, Hanson's testimony, was given on a former trial, and read at this trial, said Hanson having died before the second trial. He testified as to directions given him by the Mayor who succeeded the Mayor under whom the custom is claimed to have originated, and who was the Mayor at the time of the accident, and that those directions were in substance like the instructions under the former Mayor. He also testified to the slips, and to his getting them, and to his being on duty all of the month of August, 1907, so that the city must have had actual notice through the officer presumably actually charged with the duties of looking after the streets and sidewalks.

If the Street Commissioner had notice acquired in any way it amounted to notice to the city. Under the authority of City of Joliet v. Looney, 159 Ill. 471, this was sufficient notice and the evidence in the record in the relation thereto was, in the main, competent and

admissible, at least we see no reversible error in its admission.

The next point made in the argument is that the verdict is against the weight of the evidence. This was a question for the jury. There was proof that appellee fell into a hole in the sidewalk, and that she was hurt thereby; that she was attended by physicians for treatment for the injuries resulting from the accident; that she had to be sent to the hospital, where an operation was performed, by which a part of the shin bone was removed; that she incurred quite a large expense for medical and surgical attendance. This is in no way rebutted or denied. If the city was chargeable with notice of the defect in the sidewalk that caused the injury when appellee fell, and had reasonable time after getting such notice to repair the defect, and did not, then as a matter of law, under the evidence, it was liable. We hold the city was liable. This being our opinion, we hold that the court did not err in not directing a verdict, which disposes of the fourth point made in the argument.

On the question of the damages being excessive, there is nothing in the evidence to indicate passion, prejudice or improper conduct on the part of the jury, and the verdict is as near the actual damages shown in the evidence as a jury would naturally arrive at.

Appellee was accustomed to work six days in a week, earning $1.50 per day. She was incapacitated for work about two years. She had to walk on crutches thereafter and was able to work but a part of the time. She suffered serious pain. The trial occurred about four years after the accident, and there was proof that for two years she could not work at all, and after the two years her earning capacity was reduced by about one-half. Her loss of earnings and her physician's bill would amount to nearly as much as the verdict, to say nothing of the pain and suffering. The amount of damages was for the jury to determine, and unless it appears that the jury were moved by passion or prejudice, or something outside of the evidence, their ver-

dict should not be disturbed on account of its amount.

As to the error in giving plaintiff's instructions Nos. 1, 2 and 3 as modified: Instruction No. 1 does not direct a verdict, therefore it was not necessary for it to include all of the elements entitling the plaintiff to a recovery. It purports to say what would be negligence on the part of the city only. The defendant might be guilty of negligence, and yet, the plaintiff might not be entitled to a verdict. The negligence of the defendant is one thing, that of the plaintiff another, and inasmuch as the instruction did not direct a finding of guilty, it was not error to give it.

Our views on the questions of fact involved in the first instruction are herein stated, and we are not inclined to reverse the judgment on account of the giving of this instruction.

The criticism made on the second instruction is that it is faulty in that it assumes the city liable, whether there was any notice to the city or not. We do not think it subject to that criticism. By it, the jury were told, if they believed the city negligently permitted a hole to remain in the sidewalk, and that the city knew, or by the exercise of reasonable care might have known of said hole, for a sufficient length of time to repair it, etc., then, believing other things enumerated in the instruction, the plaintiff was entitled to recover.

There was sufficient evidence on which to base the third instruction. Dr. Bennett testified as to his services, and that they were reasonably worth from $150 to $200, and that appellee had paid him $90 of it by her labor.

We have not carefully examined the record as to other payments, if any, or physician's charges, if any, but in our judgment there was sufficient evidence to warrant the giving of this instruction, because by it the jury were told to take into consideration the proofs, if any, of physician's bills paid, or what appellee had become liable for as shown by the evidence.

Appellant's refused instructions Nos. 2, 3 and 5 were properly refused. The third instruction was

merely an abstract proposition of law, for the refusing of which no error can be successfully urged. The second and fifth instructions were misleading. There was nothing direct in the evidence from which neglect could be inferred to secure medical attendance.

The evidence shows about the usual course taken in this case that is pursued by people in appellee's walk in life. Not calling a physician until home remedies are exhausted is commonly resorted to by people in that rank. Appellee testified that she called in Dr. Sargent, Monday or Tuesday, and that the accident happened Saturday night. Dr. Sargent says it was September 12th when he was called, and then he did not treat appellee's leg, and never did. The injury to her leg which, according to the evidence, did not seriously develop at once, more than an apparent bruise, was the principal cause of appellee's trouble, and that trouble was first treated by Dr. Bennett.

The refused instructions were well calculated to mislead the jury in that regard, and it is not seen how the verdict would have been different if these instructions had been given, so if it was error to refuse them, it was not an error of sufficient magnitude to warrant a reversal.

Seeing no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*